## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                          |     |                          |
|--------------------------|-----|--------------------------|
| NOLAN KINARD FLOYD, SR., | *   |                          |
|                          | *   |                          |
| **Plaintiff**            | *   |                          |
|                          | *   | Civ. No.: MJM-23-529     |
| v.                       | *   |                          |
|                          | *   |                          |
| DONNA HANSEN, et al.,    | *   |                          |
|                          | *   |                          |
| **Defendants**           | *   |                          |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Self-represented plaintiff Nolan Kinard Floyd, Sr., who is incarcerated at North Branch Correctional Institution, filed suit for damages pursuant to 42 U.S.C. § 1983 against Donna Hansen, Facility Administrator; Cleveland Friday, Assistant Warden; Ms. Carter, Grievance Coordinator; and Lt. Adebayo Adeyumo, Intelligence Officer (collectively, "Defendants"), alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. ECF No. 1.

Defendants have moved to dismiss or, in the alternative, for summary judgment, on the grounds that Floyd failed to exhaust his administrative remedies, that the Complaint fails to state a claim upon which relief may be granted, and that Defendants are entitled to qualified immunity. ECF No. 13. Floyd was notified of his right to file a response in opposition to Defendants' Motion pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), and was granted an extension of time to do so. ECF Nos. 14 & 16. Nonetheless, Floyd did not file a response opposing the motion. The motion is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Defendants' motion will be granted in part and denied in part.

## I.      BACKGROUND

On March 4, 2019, Floyd was transported to Baltimore Pretrial Facility – Jessup ("BPFJ") from the Baltimore Central Booking and Intake Center following an incident with an employee. ECF No. 1 at 3. He was placed in a disciplinary segregation cell for forty-five days and did not have a bed roll for thirty days. *Id*. Floyd filed complaint forms with the grievance coordinator, Ms. Carter, regarding his lack of a bed roll but received no response. *Id*. He also advised the tier officers of the problem, but without success. *Id*. Floyd "contacted the Facility Administrator[1] requesting for the problem to be fixed, but the problem was never fixed." *Id.* He thus slept on a "cold dirty mattress with no sheets or blanket" for thirty days. *Id*. Finally, Floyd "refused to come out of the shower one day until he received his belongings[,]" at which point an officer brought him a bed roll. *Id*.

Floyd attempted to file administrative remedy procedure ("ARP") forms but was told that pretrial detainees "do not file ARPs." *Id.* Floyd also alleges that many of his complaints went unanswered, and he feels the facility officials were retaliating against him for the original incident that resulted in his disciplinary segregation. *Id.* at 3–4. According to Floyd, at the time of the foregoing incidents, Hansen was Facility Administrator of BPFJ, Friday was Assistant Warden, Adeyumo was Intelligence Officer, and each of these defendants was responsible for the welfare and security of persons incarcerated there. *Id.* at 2.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

---

[1]      The Court presumes that Floyd refers to defendant Hansen here, given Floyd's references to Hansen as Facility Administrator, including in the case caption of his Complaint. *See* ECF No. 1.

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable[] and . . . a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Pro se pleadings are construed more generously, although courts may not ignore a clear failure to allege facts setting forth a cognizable claim. *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980) (citations omitted).  A court must review a motion to dismiss on its merits even if the claimant fails to oppose the motion. *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (citations omitted).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present, and the Court considers, matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll

parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The Court notified Floyd that he had the right to respond to Defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond. ECF Nos. 14 & 16. Moreover, the Defendants' motion, which identifies summary judgment as possible relief, provided sufficient notice for Floyd to have a reasonable opportunity to present relevant evidence in support of his position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Thus, the Court is satisfied that Floyd has been advised that Defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56 where appropriate.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for

summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at

205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.*

(quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary

judgment, the Court "view[s] the facts and inferences drawn from the facts in the light most

favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs.*

*Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.   ANALYSIS

#### A.   Exhaustion

Defendants argue that the Complaint should be dismissed because Floyd failed to exhaust

his administrative remedies. ECF No. 13-1 at 6. The Prison Litigation Reform Act ("PLRA")

provides, in pertinent part:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained

in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for,

violations of criminal law or the terms and conditions of parole, probation, pretrial release, or

diversionary program." § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see*

*also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established, and it provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). In other words, exhaustion is mandatory, and a failure to exhaust may not be excused. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000)).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Defendants submit the Declaration of Kevin L. Harris, Acting Deputy Commissioner of the Division of Pretrial Detention and Services. ECF No. 13-3. Harris describes a four-step grievance policy for pretrial detainees at BPFJ, the first step of which is for the detainee to file a "Resident Complaint Form within 15 calendar days of the incident giving rise to the grievance," for which "[the] Resident Grievance Office is to respond within 20 working days." *Id.* at 2. Harris declares that the Resident Grievance Office could not locate any complaints filed by Floyd regarding his cell conditions in March and April of 2019. *Id.* at 3. Because Floyd did not file a

6

"Step I grievance," Harris declares, he "also did not file any appeal nor comply with Steps II, III, or IV of the resident grievance procedure concerning these matters." *Id*. As such, Defendants argue, Floyd did not exhaust his administrative remedies prior to filing suit.

Although Floyd did not file a response in opposition to Defendants' motion, he states in the Complaint that he "filed 180-1 complaint forms, and turned them in to defendant Grievance Coordinator Ms. Carter," and that he "never received a response." ECF No. 1 at 3. Because Floyd's Complaint is verified and based on personal knowledge, it is the equivalent of an opposing affidavit for summary judgment purposes. *See Turner v. Roderick*, Civ. No. LKG-22-0787, 2023 WL 3454769, at *1 (D. Md. May 15, 2023), *appeal dismissed sub nom. Turner v. Porter*, No. 23-7074, 2023 WL 11156603 (4th Cir. Dec. 21, 2023) (citing *Davis v. Zahradnick*, 600 F.2d 458, 459–60 (4th Cir. 1979)). Thus, Floyd's verified Complaint presents a genuine issue of material fact as to whether he filed any grievances regarding his cell conditions as described in the Complaint, and summary judgment on this basis shall be denied.

### B. Section 1983 Claims

Floyd asserts claims for damages against all Defendants under 42 U.S.C. § 1983 based on alleged violations of the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. ECF No. 1. Under § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*,

443 U.S. 137, 144 n.3 (1979)); *see also Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009).

A defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no respondeat superior liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officials may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

### 1.  Liability of Defendants Friday and Adeyumo

Defendants contend that the Complaint should be dismissed as to Friday and Adeyumo because Floyd fails to allege that either defendant personally participated in violating Floyd's constitutional rights. ECF 13-1 at 8.

Here, Floyd does not make any factual allegations that Friday and Adeyumo personally deprived him of a bed roll. He does not even mention them in the Complaint except to allege that Friday is "legally responsible for the operation of BPFJ and for the welfare of the inmates in that

prison" and that Adeyumo is "legally responsible for investigating the activities and actions within the facility and for the security of all the inmates." ECF No. 1 at 2. Even construing the Complaint liberally, these conclusory allegations are insufficient to state a claim under § 1983.

Accordingly, Floyd's claims against Friday and Adeyumo must be dismissed.

### 2. Eighth and Fourteenth Amendment Claims

Floyd was a pretrial detainee at the time of the events in question, ECF No. 1 at 2, and therefore the Fourteenth Amendment, rather than the Eighth Amendment, applies to his conditions of confinement claims. *See, e.g.*, *Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023). Nonetheless, the protections afforded to convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve the wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to establish an Eighth Amendment claim based on unconstitutional conditions of confinement, a plaintiff must "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' . . . or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to

cause serious illness and needless suffering the next week or month or year" is violative, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011).

To state Fourteenth Amendment claim based on unconstitutional conditions of confinement, a pretrial detainee must allege facts sufficient to show that the action taken was not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Short*, 87 F.4th at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)). "[I]t is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable" in that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citations omitted).

Many courts, including the U.S. Courts of Appeals for the Fourth, Seventh, Eighth, and Tenth Circuits, have held, or at least suggested, that incarcerated persons have a right to adequate bedding. *See McCray v. Burrell*, 516 F.2d 357, 365–66, 369 (4th Cir. 1975) (constitutional violation where prisoner was placed with only a mattress and no bedding in a cell that was so cold that he tore the mattress open to sleep inside the cotton filling); *Abebe v. Carter*, No. 5:11-CV-2750-RMG, 2014 WL 130448, at *14 (D.S.C. Jan. 14, 2014) (constitutional violation where prisoner was denied the basic human necessities of clothing, a mattress and blanket, and the ability to bathe for a period of four to eleven months"); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1288–89 (W.D. Va. 1981) (failure to regularly provide prisoners with clean bedding and mattresses violates the Eighth Amendment)); *Bell v. Luna*, 856 F. Supp. 2d 388, 395–98 (D. Conn. 2012) (denying motion to dismiss Eighth Amendment claim based on prison officials' failure to replace "inadequate and unhygienic mattress for nearly seven months") (citing *Townsend v. Fuchs*, 522

10

F.3d 765, 774 (7th Cir. 2008) (prisoner slept on dirty, wet, moldy mattress for fifty-nine days), *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (prisoner kept in isolation for two weeks with only underwear and a mattress), and *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide within [a prison's] living space reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing).")); *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (positively citing *Bell* and noting that conditions of a prisoner's mattress may implicate the Constitution).

In the instant case, Floyd alleges that he spent thirty days in his cell, in winter, with only a cold, dirty mattress and no other bedding. ECF No. 1 at 3. Floyd's allegations are sufficient to state a plausible constitutional violation. Accepting his allegations as true, it is plausible that the deprivation of adequate bedding for a period of thirty days in winter subjected Floyd to a serious risk of substantial harm. Defendants do not identify any legitimate nonpunitive purpose for failing to provide Floyd with minimally adequate bedding, particularly considering Floyd's allegation that he made his lack of proper bedding known to all the officers on his tier. *Id.* at 3–4. Floyd also alleges that he specifically made the conditions of his confinement known to defendants Hansen and Carter through complaints and the filing of multiple grievances. *Id.* at 3. Moreover, Floyd alleges that Hansen, as Facility Administrator, was responsible for facility operations and the welfare of prisoners. *Id.* at 2. This allegation supports a reasonable inference that at least she had supervisory authority over persons responsible for providing a bed roll to Floyd but failed to do so. Insofar as Hansen was not directly responsible for depriving Floyd of adequate bedding, the Complaint suffices to support a plausible claim of supervisory liability against her. Drawing all reasonable inferences from Floyd's allegations in his favor, it is plausible that Hansen, by failing to respond to Floyd's complaints and grievances, was deliberately indifferent to, or otherwise

tacitly authorized, her subordinates' failure to provide Floyd with adequate bedding for a thirty-day period, and that there was a plausible causal link between her inaction and the risk of harm to Floyd. Floyd has thus stated a plausible claim for relief against Hansen for alleged violations of Floyd's due process rights under the Fourteenth Amendment.

However, the Court does not find that Floyd states a plausible claim against Carter. Although Floyd alleges that Carter was, or should have been, aware that he was deprived of adequate bedding, he does not allege that Carter was either responsible for the deprivation or that she supervised anyone who was responsible for it.

Accordingly, Floyd's Fourteenth Amendment claim against Carter shall be dismissed, and his Fourteenth Amendment claim against Hansen shall proceed. Floyd's Eighth Amendment claims shall be dismissed due to his status as a pretrial detainee, as explained *supra*.

### 3. First and Fourth Amendment Claims

Floyd also asserts violations of the First and Fourth Amendments, but he does not allege any facts that would support these claims. Floyd alleges that his lack of bedding was retaliation for the incident that resulted in his disciplinary segregation, but he attributes this alleged retaliation to no particular individual, nor does he provide factual support for his theory. ECF No. 1 at 3–4. While the Court must liberally construe the Complaint, Floyd's bare legal conclusions are insufficient to satisfy the basic pleading requirements of Rule 8. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Accordingly, Floyd's First and Fourth Amendment claims shall be dismissed.

### 4. Qualified Immunity

Defendants argue that Floyd's claims should be dismissed because they are entitled to qualified immunity from this suit. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly

12

established statutory or constitutional rights of which a reasonable person would have known.'"
*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818
(1982)). "Qualified immunity balances two important interests—the need to hold public officials
accountable when they exercise power irresponsibly and the need to shield officials from
harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The
protection of qualified immunity applies regardless of whether the government official's error is a
mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.*
(quotations omitted). The doctrine is intended to give "government officials breathing room to
make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563
U.S. 731, 743 (2011); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified
immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly
incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335,
341 (1986)).

To determine whether defendant officials are entitled to qualified immunity, the court must
determine "whether the facts viewed in [the plaintiff's] favor" make out a constitutional violation
and "whether that violated right was clearly established at the time." *Stanton v. Elliott*, 25 F.4th
227, 233 (4th Cir. 2022) (citing *Pearson*, 555 U.S. at 231). The plaintiff bears the burden of proof
on first question, while the defendant bears the burden of proof on the second question. *See
Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at *14 (D. Md. May 3, 2024)
(citing *Henry v. Purnell*, 501 F.3d 374, 377–78 (4th Cir. 2007)).

Here, Defendants do not refer to any case law in support of their qualified immunity
argument. They simply claim that "because the facts pleaded by Mr. Floyd 'do not make out a
constitutional violation at all' against Defendants, the right could not be clearly established." ECF

13-1 at 14. The Court has found a plausible constitutional violation in Hansen's alleged inaction in the face of Floyd's complaints of inadequate bedding, and Defendants do not cite any case law to suggest a right to minimally adequate bedding was not clearly established at the time. Therefore, at this stage of the case, the Court does not find that defendant Hansen is entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Floyd's First, Fourth, and Eighth Amendment claims shall be dismissed without prejudice, as shall his Fourteenth Amendment claims against defendants Adeyumo, Friday, and Carter. Floyd's Fourteenth Amendment claim against defendant Hansen shall not be dismissed.

A separate Order shall follow.


___8/14/24___                                    _____/S/_____
Date                                             Matthew J. Maddox
                                                 United States District Judge

14