THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| NOLAN KINARD FLOYD, SR., | * | |
| Plaintiff, | * | |
| v. | * | Civ. No.: MJM-23-529 |
| DONNA HANSEN, et al., | * | |
| Defendants. | * | |

## MEMORANDUM

Self-represented plaintiff Nolan Kinard Floyd, Sr. ("Floyd"), who is incarcerated at North Branch Correctional Institution, filed suit for damages pursuant to 42 U.S.C. § 1983 against Donna Hansen ("Hansen"), Facility Administrator; Cleveland Friday, Assistant Warden; Ms. Carter, Grievance Coordinator; and Lt. Adebayo Adeyumo, Intelligence Officer (collectively, "Defendants"), alleging violations of the First, Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. ECF No. 1.

Defendants moved to dismiss or, in the alternative, for summary judgment, and the motion was granted in part and denied in part. ECF Nos. 14, 19. Floyd's claims for violations of the First, Fourth, and Eighth Amendments were dismissed, as well as all claims against defendants Adeyumo, Friday, and Carter. ECF No. 19. Defendant Hansen was directed to file a response to the Complaint. *Id*.

Now pending is Hansen's Motion for Summary Judgment. ECF No. 24. Floyd was notified of his right to file a response in opposition to Hansen's motion pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975), but has not done so. ECF No. 25. The motion is ripe for

disposition. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Hansen's motion will be granted.

## I.     BACKGROUND

The Court previously summarized Floyd's Complaint allegations as follows:

> On March 4, 2019, Floyd was transported to Baltimore Pretrial Facility – Jessup ("BPFJ") from the Baltimore Central Booking and Intake Center following an incident with an employee. ECF No. 1 at 3. He was placed in a disciplinary segregation cell for forty-five days and did not have a bed roll for thirty days. *Id*. Floyd filed complaint forms with the grievance coordinator, Ms. Carter, regarding his lack of a bed roll but received no response. *Id*. He also advised the tier officers of the problem, but without success. *Id*. Floyd "contacted the Facility Administrator[1] requesting for the problem to be fixed, but the problem was never fixed." *Id.* He thus slept on a "cold dirty mattress with no sheets or blanket" for thirty days. *Id*. Finally, Floyd "refused to come out of the shower one day until he received his belongings[,]" at which point an officer brought him a bed roll. *Id*.
>
> Floyd attempted to file administrative remedy procedure ("ARP") forms but was told that pretrial detainees "do not file ARPs." *Id.* Floyd also alleges that many of his complaints went unanswered, and he feels the facility officials were retaliating against him for the original incident that resulted in his disciplinary segregation. *Id.* at 3–4. According to Floyd, at the time of the foregoing incidents, Hansen was Facility Administrator of BPFJ, Friday was Assistant Warden, Adeyumo was Intelligence Officer, and each of these defendants was responsible for the welfare and security of persons incarcerated there. *Id.* at 2.

ECF No. 18 at 2.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in

---

[1] The Court presumes that Floyd refers to Hansen here, given Floyd's references to Hansen as Facility Administrator, including in the case caption of his Complaint. *See* ECF No. 1.

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, the Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.   ANALYSIS

Liberally construing the Complaint against Hansen, Floyd alleges that Hansen violated his Fourteenth Amendment rights when she knew that he was subjected to unconstitutional prison conditions by being denied a bed roll, which forced him to sleep on a cold, dirty floor, and took no action. Floyd also alleges that Hansen was the Facility Administrator who supervised the employees who were responsible for causing Floyd to sleep on the floor.

Floyd was a pretrial detainee at the time of the events in question, ECF No. 1 at 2, and therefore the Fourteenth Amendment, rather than the Eighth Amendment, applies to his conditions-of-confinement claims. *See, e.g.*, *Short v. Hartman*, 87 F.4th 593, 604–05 (4th Cir. 2023). Nonetheless, the protections afforded to convicted prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment because due process proscribes punishment of a detainee before a proper adjudication of guilt. *See Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve the wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to establish an Eighth Amendment claim based on unconstitutional conditions of confinement, a plaintiff must "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' . . . or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993)). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" is violative, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011).

To state a Fourteenth Amendment claim based on unconstitutional conditions of confinement, a pretrial detainee must allege facts sufficient to show that the action taken was not

"rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation to that purpose." *Short*, 87 F.4th at 611 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)). "[I]t is sufficient that the plaintiff show that the defendant's action or inaction was . . . objectively unreasonable" in that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* (citations omitted).

Several courts, including the U.S. Courts of Appeals for the Fourth, Seventh, Eighth, and Tenth Circuits, have held, or at least suggested, that incarcerated persons have a right to adequate bedding. *See McCray v. Burrell*, 516 F.2d 357, 365–66, 369 (4th Cir. 1975) (constitutional violation where prisoner was placed with only a mattress and no bedding in a cell that was so cold that he tore the mattress open to sleep inside the cotton filling); *Abebe v. Carter*, No. 5:11-CV-2750-RMG, 2014 WL 130448, at *14 (D.S.C. Jan. 14, 2014) (constitutional violation where prisoner was denied the basic human necessities of clothing, a mattress and blanket, and the ability to bathe for a period of four to eleven months"); *Dawson v. Kendrick*, 527 F. Supp. 1252, 1288–89 (W.D. Va. 1981) (failure to regularly provide prisoners with clean bedding and mattresses violates the Eighth Amendment)); *Bell v. Luna*, 856 F. Supp. 2d 388, 395–98 (D. Conn. 2012) (denying motion to dismiss Eighth Amendment claim based on prison officials' failure to replace "inadequate and unhygienic mattress for nearly seven months") (citing *Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008) (prisoner slept on dirty, wet, moldy mattress for fifty-nine days), *Maxwell v. Mason*, 668 F.2d 361, 363 (8th Cir. 1981) (prisoner kept in isolation for two weeks with only underwear and a mattress), and *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) ("[A] state must provide within [a prison's] living space reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat,

plumbing).")); *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) (positively citing *Bell* and noting that conditions of a prisoner's mattress may implicate the Constitution).

Hansen first argues that the Complaint should be dismissed because Floyd failed to exhaust his administrative remedies. ECF No. 24-1 at 5. She previously made the same argument, which the Court rejected. ECF No. 13-1 at 6; ECF No. 18 at 7. Hansen presents no new evidence in support of her exhaustion defense. Therefore, the Court sees no reason to reconsider its prior ruling.

Hansen next argues that she is immune from suit in her official capacity. ECF No. 24-1 at 7. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Hansen is a Maryland state employee. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). Accordingly, the claim against Hansen in her official capacity is barred by the Eleventh Amendment, *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed.

Finally, Hansen argues that she is entitled to summary judgment even if sued in her individual capacity because Floyd has not shown either that she was personally involved in any constitutional violation or that she is subject to supervisory liability. ECF No. 24-1 at 8. In support, Hansen submits her declaration, in which she attests that she was the Facility Administrator at BPFJ during the relevant time period and that she was responsible for "supervising the correctional officers working there and monitoring the safety and security of the facility and the individuals confined within." ECF No. 24-3. . She avers that she "never received any grievances from Mr. Floyd through [the grievance process] complaining of a missing bedroll

or linens, nor [is she] aware of any such grievances he filed. Mr. Floyd never advised [her] that he was in need of bedding or linens. [She is] not aware that any of the correctional employees that [she] supervised deprived Mr. Floyd of bedding or towels." *Id.* at 3.

Under 42 U.S.C. § 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009). A defendant's own action—or failure to act—is required for liability under § 1983. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no respondeat superior liability under § 1983. *Love-Lane*, 355 F.3d at 782. Officials may be found liable only if the plaintiff shows the official "acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge*, 550 F.2d at 928 (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)).

Here, Floyd alleges that he "contacted the Facility Administrator requesting for the problem to be fixed," but he does not describe when, what, or how he allegedly communicated to Hansen his lack of bedding or the conditions he was experiencing as a result. For her part, Hansen avers that she had no personal knowledge of Floyd's lack of bedding, nor did she learn of the issue through the grievance process or from her subordinates. Hansen's attestation that she knew nothing of Floyd's lack of bedding is unrefuted; therefore, she cannot be held personally liable under § 1983 for the alleged unconstitutional prison conditions and is entitled to summary judgment.

To the extent that Floyd intends to hold Hansen liable in her supervisory position as Facility Administrator, his claim likewise fails. To state a claim for supervisory liability under § 1983 based on a subordinate's conduct, the plaintiff must allege that (1) the supervisor had actual or constructive knowledge that subordinate's conduct "posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff" (2) the supervisor responded in a manner that was so inadequate that it showed "deliberate indifference to or tacit authorization" of the subordinate's conduct; and (3) there was "an affirmative causal link between the supervisor's inaction" and the plaintiff's constitutional injury. *Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 257 (4th Cir. 2022) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Floyd alleges in general and conclusory fashion that Hansen knew that he was subjected to unconstitutional prison conditions and "was legally responsible for the operation of BPFJ and for the welfare of the inmates in that prison." ECF No. 1 at 2. The allegations and legal conclusions in the Complaint are not sufficient to create a genuine dispute of material fact as to supervisory liability on the part of Hansen, as there is no evidence to support a supervisory liability claim sufficient to overcome Hansen's summary judgment motion.

### IV. CONCLUSION

For the foregoing reasons, Defendant Hansen's Motion for Summary Judgment is granted. A separate Order shall follow.

9/24/25
Date

Matthew J. Maddox
United States District Judge

8